IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MOISES A. QUINTEROS-ORELLANA                                    PLAINTIFF

v.                           CASE NO. 5:25-CV-05130-CDC

DEON T. CLAY                                                    DEFENDANT


### MEMORANDUM OPINION

Plaintiff Moises A. Quinteros-Orellana brought suit under 42 U.S.C. § 1983 against Defendant Deon T. Clay, a former Tontitown, Arkansas, law enforcement officer, in his individual capacity, alleging that on June 13, 2024, Defendant arrested Plaintiff in violation of rights protected by the First and Fourth Amendments to the U.S. Constitution. (ECF No. 2). Defendant denies these claims (ECF No. 7) and the parties have filed cross motions for summary judgment. (ECF Nos. 28, 32).

The Court first turns its attention to Defendant's Motion for Summary Judgment which seeks the grant of qualified immunity to Defendant and dismissal of Plaintiff's Complaint.  The Motion (ECF No. 32) will be granted in part, and denied in part as explained below.

### I.  Standard of Review

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Stark v. Lee Cnty.,* 993 F.3d 622, 625 (8th Cir. 2021) (citations omitted). "When reviewing a law enforcement officer's

entitlement to qualified immunity at summary judgment, a district court 'must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so "blatantly contradicted by the record ... that no reasonable jury could believe [them]."'" *Watson v Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) (alterations in original) (citation omitted). "Then the court should determine if those facts demonstrate a constitutional violation that is clearly established." *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012).

## II.  Factual Record

The Court has reviewed the parties' statements of materials fact and responses thereto (ECF Nos. 30, 34, 36, 38); Defendant's body camera video (ECF No. 30-2); Defendant's deposition transcript (submitted as ECF Nos. 30-1, 34-2); Plaintiff's video and his passenger's video (ECF Nos. 30-2, 30-4); the Tontitown Police Report (ECF No. 34-1); and district court records.  (ECF No. 30-4).  The submitted videos are clear and the Court has accepted those videos for the truth of what happened. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Clarence Steelman v. City of Shannon Hills, Arkansas, et al.*, 2026 WL 1507816 (E.D. Ark. May 29, 2026). From the materials in the record, the following facts appear straightforward and substantially undisputed:

On the date in question, Defendant Deon T. Clay was a certified law enforcement officer with the City of Tontitown's Police Department; he previously attended a training academy Defendant referred to as CALETA.  (ECF No. 30-1, pp. 4-5).  Defendant had prior law enforcement experience with three (3) departments in Arkansas – the Conway Police Department, the Lowell Police Department and the Johnson Police Department. *Id.*

2

At approximately 11:30 p.m. on June 13, 2024, Defendant made a traffic stop of a black Camaro at 5950 West Sunset Avenue in Tontitown, Arkansas.  Defendant stopped the Camaro after viewing it "accelerate[] the hardest" from a stoplight and believing it was racing with other vehicles.  (ECF No. 34-2, p. 9; No. 38, p. 2). The traffic stop occurred in the private parking lot of Alliance RV, which was closed due to the hour. (ECF No. 34-1). When he initiated the traffic stop, Defendant – who had been on the telephone "with his partner" – told his partner, Officer Calico, to head Plaintiff's way. (ECF No. 34-2, pp. 12-13).

Plaintiff – who was driving a separate vehicle with a female passenger – pulled his vehicle into the parking lot where the traffic stop was occurring and parked, leaving an empty space between Plaintiff's vehicle and the stopped Camaro. (ECF No. 38, p. 2).  At that time, Defendant was the only officer on the scene and had parked his patrol car directly behind the Camaro with the lights activated. As reflected in the body camera video, Defendant yelled several times in the direction of Plaintiff, advising "I don't need you pulling in here" and "I don't need you pulling in here with me" as Defendant was initially walking over to the Camaro. (ECF No. 30-2; No. 38, p.3)  As Plaintiff pulled into the parking lot and parked, Plaintiff's driver window was down and Plaintiff held his cell phone up, apparently to illustrate that he was recording Defendant. (ECF No. 38, p. 2). All three (3) videos reflect that the scene of the traffic stop was well-lighted.

Defendant immediately started walking toward Plaintiff's vehicle, shouting for Plaintiff to  "go somewhere else," "go somewhere now," "you want to get arrested?" "you need to get out of here or you're going to get arrested," and "go record somewhere else now."  (ECF No. 30-2; No. 38, p. 2).  Plaintiff did not leave and responded he was not

3

impeding but was just videoing; Defendant again said "go record somewhere else." (ECF No. 30-2).   After warning "last chance" and commanding Plaintiff to exit his vehicle, Defendant reached through the open window, unlocked and opened the Plaintiff's driver's door; unbuckled and removed Plaintiff from inside the vehicle; and removed Plaintiff's phone from his hand and tossed it inside Plaintiff's vehicle.  Defendant then took Plaintiff to the ground where Plaintiff was face down on the pavement; Defendant handcuffed Plaintiff and placed him in the back of Defendant's patrol car. (ECF No. 38, pp. 3-4).  The video reflects Plaintiff saying he was not resisting while being pulled from his car. While handcuffing Plaintiff, Defendant said "I told you to get away from the traffic stop." (ECF No. 30-2).

Officer Calico responded to the scene within a couple of minutes.  (ECF No. 30-2; No. 34, p. 2). The video reflects that Defendant told Officer Calico that the two cars were revving their engines, and one had accelerated quickly at a stoplight which was why Defendant stopped the vehicle. (ECF No. 30-2). According to the incident report, Officer Calico advised Plaintiff of his Miranda rights. (ECF No. 34-1).

Refocusing his attention to the traffic stop, Defendant issued a warning to the driver of the Camaro.  When that driver asked Defendant what would happen to Plaintiff, Defendant responded "[h]e's got to learn his lesson some day" and that Plaintiff had a "right to record but not like this." (ECF No. 30-2).

It appears undisputed that after speaking with his supervisor, Sgt. Hammons, Defendant cited Plaintiff for obstruction of governmental operations, and released Plaintiff from custody to appear the following month in District Court. (ECF No. 30-2; No. 38, p.4). The video reveals that Defendant engaged in a brief conversation with Plaintiff and

explained that due to officer safety, he had told Plaintiff to "go back there" (pointing his hand) to record; the video reveals Plaintiff challenging/denying that these were Defendant's instructions prior to his arrest. (ECF No. 30-2).

Plaintiff sustained a small, bloody laceration to his forehead as a result. (ECF Nos. 34, 36). Officer Calico apparently pointed out that Plaintiff had an injury to his head (ECF No. 34, p2; No 34-2, p. 18), but Plaintiff refused medical attention at the scene. (ECF No. 34, p. 2; No. 36, p. 3).

The matter was sent to the district prosecutor for review and was "considered closed" as of July 8, 2024 "due to no prosecution." (ECF No. 34-1, p. 4). The charge against Plaintiff was later dismissed on January 23, 2025. (ECF No. 30-4).

Defendant testified during his deposition that he arrested Plaintiff "strictly" due to "an officer safety issue." (ECF No. 34-2, p. 14). Defendant testified he had concerns when Plaintiff pulled into the parking lot and when Plaintiff did not leave as directed by Defendant. (ECF No. 34-2, p. 8). Defendant denies that Plaintiff's arrest had anything whatsoever to do with the cell phone or Plaintiff's recording, testifying he cared only about his own safety. (ECF No. 34-2, p. 18).

### III. Qualified Immunity

As noted by U.S. District Judge D. Price Marshall, Jr. in *Steelman, supra*, "[a] recent word from the Supreme Court summarizes the applicable law:"

> Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law. A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. A right is not clearly established if existing precedent does not place the constitutional question beyond debate. To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances

5

> was held to have violated the Constitution. The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Principles stated generally, such as that an officer may not use unreasonable and excessive force, do not suffice. In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct. [...] Whether any particular use of force violates the Fourth Amendment depends on the facts and circumstances of each particular case, including whether the officer gave warnings before using force.

*Zorn v. Linton*, No. 25-297, slip op. at 3-4 (U.S. 23 March 2026) (per curiam) (quotations and citations omitted).[1]

### A.  Plaintiff's Fourth Amendment Claim

To establish a Fourth Amendment violation, "[Plaintiff] must demonstrate a seizure occurred and the seizure was unreasonable." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003); *see also Quraishi v. St. Charles Cnty, Mo.,* 986 F.3d 831, 839 (8th Cir. 2021).  "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id*., citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  A seizure is an "application of physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.,* 499 U.S. 621, 626 (1991). "Only when the officer ... has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19 n.16.  Where a plaintiff has not been seized, no Fourth Amendment violation has occurred. *See Steed, by and through Steed v. Mo. State Highway Patrol*, 2 F.4th 767, 770 (8th Cir. 2021).

---

[1] Noted by the undersigned, Plaintiff's argument that qualified immunity is unconstitutional presently lacks merit.

6

Plaintiff's complaint includes a claim for excessive force. Under applicable Eighth Circuit precedent, it's been clearly established for some time that an officer cannot take a compliant, non-threatening pretrial detainee to the ground. *E.g., Montoya v. City of Flandreau,* 669 F.3d 867, 870-73 (8th Cir. 2012); *Karels v. Storz,* 906 F.3d 740, 744-47 (8th Cir. 2018); *MacKintrush v. Pulaski County Sheriff's Department*, 987 F.3d 767, 770-71 (8th Cir. 2021); *Cartia v. Beeman,* 122 F.4th 1036, 1042 (8th Cir. 2024).  Nevertheless, in his pleadings, Plaintiff has abandoned his Fourth Amendment excessive force claim so no further analysis is necessary. (ECF No. 29, p. 12).

"The Fourth Amendment includes the right to be free from arrest without probable cause." *Lambert v. City of Dumas,* 187 F.3d 931, 935 (8th Cir. 1999).  In other words, "a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam).  "Probable cause exists when the totality of circumstances at the time of arrest would lead a reasonable person to think the defendant committed or is committing a crime." *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022).  Courts consider "the events leading up to the arrest" and "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)).

Eighth Circuit law is clear that Plaintiff's Fourth Amendment claim is defeated where the arresting officer had either probable cause or arguable probable cause. *Thurairajah v. City of Fort Smith,* 925 F. 3d 979, 983 (8th Cir. 2019).  "Arguable probable cause" exists where the arrest was "based on objectively reasonable – even if mistaken – belief that the arrest warrant was based in probable cause."  *Ulrich v Pope Cnty,* 715 F.3d 1054, 1059;

*see also Brown v. City of St. Louis,* 40 F.4th 895, 901 (8th Cir. 2022). Said another way, arguable probable cause "is a mistaken but objectively reasonable belief the suspect committed a criminal offense." *Dowell v. Lincoln Cnty.*, 762 F.3d 770, 777 (8th Cir. 2014). The law requires analysis of "the totality of the circumstances to determine if arguable probable cause existed," asking whether "a reasonable officer" could reasonably but mistakenly "conclude ... that there was a 'substantial chance of criminal activity.'" *Wesby,* 583 U.S. at 61, 65 (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n.13 (1983)). The undersigned is thus tasked with looking at "the whole picture" when making this determination. *Wesby,* 583 U.S. at 60 (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)); *see also Nieters v. Holtan,* 83 F.4th 1099, 1107 (8th Cir. 2023) ("[W]e may not disregard exculpatory evidence when considering the totality of the circumstances to determine if arguable probable cause existed.") This is consistent with the Supreme Court's admonition in *Barnes v. Felix,* 605 U.S. 73 (2025) that "inquiry into the reasonableness of the police force requires analyzing the 'totality of the circumstances.'" *Id.* at 80. Probable cause is a legal question for the Court. *See Lockhart v. Siloam Springs, et al.*, 2026 WL 1676240 (W.D. Ark. June 10, 2026) (citation omitted).

Defendant arrested Plaintiff for obstruction of governmental operations in violation of Ark. Code Ann. § 5-54-102. So the first question before the Court is whether it was objectively reasonable for Defendant to mistakenly believe, under the totality of the circumstances, that Plaintiff was obstructing Defendant in the performance of his official duties.

Under Arkansas law, a person commits the offense of obstructing government operations if he "knowingly obstructs, impairs or hinders the performance of any

governmental function." Ark. Code Ann. § 5-54-102.  Governmental function is defined as "any activity that a public servant is legally authorized to undertake on behalf of any governmental unit he or she serves."  Ark. Code Ann. § 5-54-101(6). Interruption of officers engaged in an investigation can provide probable cause for obstruction. *See Nelson v. State,* 2013 Ark. App. 421 (disruption of witness interviews). Arkansas law, however, requires *actual* interference with law enforcement officers or government activities in order to sustain a conviction for obstruction of governmental operations.  *See e.g., Keeton v. State,* 2026 Ark. App. 53 (Jan. 28, 2026) (reversing obstruction conviction on insufficient evidence because Keeton "did nothing to personally interfere with the officers' activities" and contrasting *Kelley v. State,* 75 Ark. App. 144 (2001) (shouting and fleeing); *RB v. State,* 2013 Ark. App. 377 (refusing to return to cell), and *Gordon v. State,* 2021 Ark. App. 96 (blocking a driveway and honking so her brother could escape)).

The Court does not disregard Defendant's statements – both on the night of Plaintiff's arrest and later during his deposition – that Defendant's primary concern was officer safety.[2]  Nevertheless, and despite his concerns, the Court is not persuaded it was reasonable for Defendant to mistakenly believe Plaintiff was engaged in activity which was obstructing the traffic stop. The time elapsing between Plaintiff pulling his vehicle into the parking lot, and being pulled from his vehicle, placed under arrest, handcuffed and detained in Defendant's patrol car was less than two (2) minutes. (ECF No. 30-2). And the record is undisputed: While Plaintiff did not follow Defendant's commands to leave and/or

---

[2] Under the Fourth Amendment, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  And officer safety – while mission critical – cannot trump the requirement for probable cause to support a warrantless arrest.

go film somewhere else, Plaintiff remained in his parked car a short distance away until he was approached and removed by Defendant. Plaintiff was a passive onlooker and did not approach or otherwise interfere. Plaintiff stayed inside his vehicle and was using his cell phone to make a recording; he did nothing more which could be viewed as obstruction. The undisputed facts here are distinguishable from those in *Sullivan v. Richardson*, 2026 Ark. App. 145, where the Arkansas Court of Appeals found arguable probable cause of obstruction where the onlooker – instead of leaving as commanded – exited his vehicle, approached the officer's police vehicle during an active investigation of a violent crime suspect, engaged the officer in conversation, and then refused to withdraw. *Id.* Viewed in the light most favorable to Plaintiff, there is no basis for reasonably but mistakenly concluding Plaintiff was actually obstructing governmental operations under Arkansas law. While Plaintiff's action of parking nearby and using his cell phone to record Defendant was subjectively annoying and/or concerning, there is not arguable probable cause to believe Plaintiff was obstructing governmental operations.

These facts are reminiscent of those in *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005) where a bystander black lawyer was arrested for obstruction under this same obstruction statute, and the Eighth Circuit found qualified immunity was properly denied. In *Walker*, the bystander parked his van directly behind one police car and then walked across the street to observe a traffic stop of young black men being conducted by white police officers; the bystander spoke only when questioned by officers – saying he was there to observe "Pine Bluff's finest in action," pointed out he was doing nothing wrong, and was providing his identification when arrested. *Id.* at 992. The appellate court found that "[n]o reasonable police officer could believe that he had arguable probable

cause to arrest such an on-looker in this situation, for obstruction of governmental operations or any other purported crime." *Id*. at 993. Chief Judge Loken wrote the decision, noting that while the "issue is often more complex when police officers are engaged in public law enforcement activities," "[i]n a democracy, public officials have no general privilege to avoid publicity and embarrassment by preventing public scrutiny of their actions." *Walker,* 414 F.3d at pp. 992-93; *see also Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (an investigatory stop and 20 minute seizure was not supported by reasonable suspicion because the bystander observing traffic stops was not doing anything illegal).

The totality of the undisputed facts defeat arguable probable cause to arrest Plaintiff on June 13, 2024, for obstruction under Ark. Code Ann. § 5-54-102.  And without arguable probable cause, Defendant's warrantless arrest violated Plaintiff's clearly established rights under the Fourth Amendment. For these reasons, Defendant is not entitled to qualified immunity, *Thurairajah, supra,* and Plaintiff's Fourth Amendment claim will proceed.

### B.  Plaintiff's First Amendment Claim

Plaintiff further alleges his arrest by Defendant violated Plaintiff's clearly established right to free speech guaranteed under the First Amendment to the United States Constitution. *See* U.S. CONST. amend. I. "The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976); *see Bigelow v. Virginia*, 421 U.S. 809, 811 (1975); *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 414 n.1 (5th Cir. 2014). The First Amendment protects "the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition

11

the Government for a redress of grievances." U.S. Const. amend. I. Those protections "prohibit[ ] government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett,* 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quotation omitted).

Thus, to prevail on a First Amendment retaliation claim, Plaintiff must show: (1) he engaged in protected activity; (2) Defendant caused an injury to Plaintiff that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury. *See Baribeau v. City of Minneapolis,* 596 F.3d 465, 481 (8th Cir. 2010) (per curiam); *Molina v. City of St. Louis, Missouri,* 59 F.4th 334, 338 (2023). To establish the causal connection, Plaintiff must show he was "singled out" because of the exercise of his constitutional rights. *See id.*

Once again, however, establishing the violation itself is only half the battle. Getting past qualified immunity requires Plaintiff to show that it would have been "sufficiently clear [to] every reasonable official ... that what [they were] doing violate[d]" the First Amendment. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted); *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (explaining the burden remains with Plaintiff, even at this step); *Thompson v. Cockrell,* 2025 WL 2657074 (8th Cir. Sept. 17 2025). "Existing precedent," in other words, must have put the issue "beyond debate" as of the date of Plaintiff's arrest on June 12, 2024. *Molina, 59 F.4th at 338 (citing Reichle,* 566 U.S. at 664)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

While the parties have included instructive caselaw, the Court does not find a decision among them which is on all fours with the present facts – i.e., where an otherwise peaceful citizen is arrested while filming a law enforcement stop occurring in a private parking lot.  An exact match, however, is not required if the constitutional issue is "beyond debate." *Id.; see Quraishi v. St. Charles County, Missouri,* 986 F.3d 831, 838 (8th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, *supra).*

It has been observed that the First Amendment protects the right to peacefully observe government officials, including law enforcement officers, who are engaged in their official duties in public*. See Tincher v Noem,* 816 F. Supp. 3d 931, 967 (D. Minn. 2026). As pointed out in Judge Menedez' recent decision, several Eighth Circuit decisions (all prior to the date of Plaintiff's 2024 arrest) generally support the existence of such a right. For example*, see Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) ("The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy.").  The Eighth Circuit's decision of *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (th Cir. 2021) implicitly recognized the right when ruling that "[a]ssuming Robbins had a constitutionally protected right to [record illegally parked cars outside the police department] as he was doing in this case, that right is not absolute."  The undersigned's research reveals dicta in multiple opinions supportive of this general First Amendment right to peacefully observe law enforcement officers performing law enforcement activities.

Leaving aside for the moment that Plaintiff was videoing law enforcement on private property, and despite any general understanding that individuals have the right to

peacefully observe law enforcement officers, a particular right to record/video police officers in public areas does not appear to have been clearly established in 2024.  In so concluding, the undersigned is persuaded by the non-binding decision of *Aunhkhotep v. Eberhart,* 2025 WL 3012995 (E.D. Mo. Oct. 28, 2025) wherein the district court analyzed whether Aunhkhotep's First Amendment right to video within the lobby of the St. Louis Tax Assessor's Office was clearly established, explaining:

> Even the right to record police officers on public streets is not clearly established. The Eighth Circuit said so just two years ago. *Molina,* 59 F.4th at 338–40. *Molina* acknowledged that some previous Eighth Circuit precedent had included imprecise language suggesting otherwise. The Eighth Circuit in 2020 had stated that there is a "clearly established right to watch police-citizen interactions at a distance and without interfering." *Id.* at 339 (quoting *Chestnut v. Wallace,* 947 F.3d 1085, 1090 (8th Cir. 2020)). But *Molina* made clear that *Wallace* and other similar cases are limited to their Fourth Amendment contexts, and *Molina* squarely held that "recording police-citizen interactions was not a clearly established First Amendment right in 2015," when the alleged facts at issue in *Molina* occurred. *Id.* at 338 (emphasis in original).
>
> So if the right was not clearly established in 2015, when the events in *Molina* occurred, what about in 2024? Again, the Court has not located case law establishing that right beyond debate. In assessing this question, the Court looks not only to the Eighth Circuit but also to other courts because, "in the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts." *K.W.P. v. Kansas City Pub. Schools,* 931 F.3d 813, 828 (8th Cir. 2019) (citation omitted). Several circuits do recognize a right to record police in certain public places. *E.g., Fordyce v. City of Seattle,* 55 F.3d 436 (9th Cir. 1995); *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia,* 862 F.3d 353 (3d Cir. 2017); *Turner v. Lieutenant Driver,* 848 F.3d 678 (5th Cir. 2017); *Irizarry v. Yehia,* 38 F.4th 1282 (10th Cir. 2022). But much of this precedent predates 2015 and was not sufficient for the Eighth Circuit in *Molina* to hold that the right to record police in public was clearly established. Later cases postdating 2015 similarly relied on pre-2015 precedent. Most of those cases predate *Molina,* but *Molina* never suggested that the right to record police became clearly established after 2015.
>
> Just the opposite. Because a right is not clearly established unless it is "beyond debate," a decision "shedding doubt on" a right is often enough to grant qualified immunity. *See Irizarry,* 38 F.4th at 1294 (citation omitted).

*Molina* cited authority "shedding doubt" on Aunhkhotep's suggested right: the Supreme Court has held that individuals have "no constitutional right to observe the issuance of a traffic ticket." *Molina,* 59 F.4th at 339 (quoting *Colten v. Kentucky*, 407 U.S. 104, 109 (1972)).

As can be seen, Judge Divine's analysis in *Aunhkhotep* heavily relied upon *Molina v. City of St. Louis*, 59 F.4th 334, 339 (8th Cir. 2023).  And while even the *Molina* court recognized that "[i]t is not beyond the realm of possibility that a First Amendment right to observe police exists," *Molina,* at 59 F.4th at 340 n.2, the undersigned – despite ardent search – finds no binding precedent following *Molina* convincing her that the right to observe and/or peacefully video a law enforcement officer conducting a traffic stop was clearly established as of June 2024. Perhaps clarity of this important First Amendment right will be established by the Eighth Circuit in the not too distant future, joining multiple circuits in recognizing the right to peacefully observe and/or record law enforcement officers who are engaged in their official duties in public. *See TIncher,* 816 F. Supp. 3d at 968 (citing *Fields v. City of Philadelphia*, 862 F.3d 352 (3d Cir. 2017); *Turner v. Lieutenant Driver,* 848 F.3d 678, 689 (5th Cir. 2017); *Gericke v. Begin,* 753 F.3d 1, 7–8 (1st Cir. 2014); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–96 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022)).

Nevertheless, because the undersigned cannot say the right was clearly established (i.e., beyond debate) in June 2024, Defendant is entitled to qualified immunity as to Plaintiff's First Amendment claim, and it will be dismissed.

## IV.  Conclusion

Defendant's Motion for Summary Judgment (ECF No. 32) with respect to the application of qualified immunity will be DENIED IN PART, and GRANTED IN PART, as follows:

\*        The Motion will be **DENIED** with respect to Plaintiff's Fourth Amendment claim.   Defendant does not enjoy qualified immunity, and the Fourth Amendment claim survives and will proceed.

\*        The Motion will be **GRANTED** as to Plaintiff's First Amendment claim. Defendant enjoys qualified immunity for this claim, Plaintiff's First Amendment claim is  **DISMISSED** with prejudice.

**IT IS SO ORDERED** this 18th day of June 2026.


_Christy Comstock_
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE